UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MEHDI HOSSEINI,                )
                                    )
              Plaintiff,      )
     v.                   )       CIVIL ACTION
                                      )       NO. 15-13979-JGD
CAPITAL ONE, N.A.,         )
                                      )
             Defendant.      )

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS AND ON
## <u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

November 16, 2016

DEIN, U.S.M.J.

## I. <u>INTRODUCTION</u>

This case arises out of the efforts of the plaintiff, Mehdi Hosseini ("Hosseini"), to avoid

the foreclosure of his home by obtaining a mortgage loan modification from the defendant,

Capital One, N.A. ("Capital One").  Hosseini contends that on May 15, 2015, the parties entered

into an oral contract under which Capital One agreed that as long as the plaintiff made three

monthly trial period payments on a timely basis, it would provide him with a loan modification

under which the outstanding amount of debt would not exceed $1.1 million.  He further

contends that the defendant breached the agreement by refusing to modify his mortgage loan

unless he agreed to pay a principal amount of over $2 million.  By his Second Amended Verified

Complaint, Hosseini has asserted claims against Capital One for breach of contract (Count I) and

for fraud (Count II), and is seeking, among other things, specific performance of the alleged oral

agreement and a permanent injunction precluding Capital One from foreclosing on his property without further order of the court.

The matter is presently before the court on "Capital One, N.A.'s Motion to Dismiss Plaintiff's Second Amended Verified Complaint" (Docket No. 22), by which Capital One is seeking the dismissal of the complaint on the grounds that it fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and that Hosseini has failed to plead fraud under the heightened pleading standard of Fed. R. Civ. P. 9(b).  The matter is also before the court on the "Plaintiff's Motion for Preliminary Injunction" (Docket No. 1-6), pursuant to which the plaintiff is seeking an order preliminarily enjoining the defendant and anyone acting on its behalf "from foreclosing, transferring, conveying, assigning, pledging, alienating, hypothecating, encumbering, mortgaging, selling, or in any way diminishing or divesting Plaintiff of the real property located at 225 County Road, Lakeville, Massachusetts."  As described below, this court finds that Hosseini has failed to state a claim with respect to either Count of his complaint, and thus cannot show that he is likely to prevail on the merits of one or more of his claims for purposes of his motion for a preliminary injunction.  Accordingly, and for all the reasons detailed herein, the defendant's motion to dismiss is ALLOWED, and the plaintiff's motion for a preliminary injunction is DENIED.

## II.  STATEMENT OF FACTS

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and give the plaintiffs the benefit of all reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is

converted into one for summary judgment." <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" <u>Id.</u> (quoting <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)).  Applying these standards to the instant case, the relevant facts are as follows.[1]

## The Parties

The plaintiff, Hosseini, is an individual who resides in Massachusetts.  (Comp. (Docket No. 19) ¶ 2).  He is also the former owner of Cross Roads R.V. and Camping ("Cross Roads"), an entity that was in the business of selling new and used recreational vehicles.  (<u>Id.</u> ¶ 2).  In 2004, Hosseini and his wife, Kim Woodbury ("Woodbury"), purchased a home in Lakeville, Massachusetts (the "Property").  (<u>Id.</u> ¶¶ 2, 4).  ING Bank FSB ("ING") was the holder of the mortgage on the Property.  (<u>Id.</u> ¶ 3).  On April 22, 2008, Hosseini and his wife refinanced the Property through ING.  (<u>Id.</u> ¶ 5).  Allegedly, the Property had an appraised value of $2.4 million at the time of the refinancing.  (<u>Id.</u>).

The defendant, Capital One, is a mortgage loan company that maintains its corporate offices in MacLean, Virginia.  (<u>Id.</u> ¶ 3).  On April 25, 2008, Capital One became the holder of the plaintiff's mortgage as a result of a merger with and/or assignment from ING.  (<u>Id.</u>).  In this action, Hosseini is attempting to enjoin Capital One from foreclosing on the Property, and

---

[1] In accordance with the applicable standard, this court has considered the exhibits attached to Capital One's Consolidated Memorandum of Law (Docket No. 23) ("Def. Ex."), as well as the transcript of a recorded conversation between Hosseini and Capital One, which can be found at Docket No. 15-1 ("Rec. Conv.").

compel Capital One to abide by the terms of an alleged oral agreement to reduce the principal amount due on his mortgage by over $925,000 in connection with the modification of his mortgage loan.

### The Bankruptcy Action

The plaintiff claims that Cross Roads, and much of the industry in which it operated, suffered near collapse following the financial crisis that hit the country in September 2008. (<u>Id.</u> ¶ 6). As a result, Hosseini allegedly experienced a drastic reduction in income. (<u>Id.</u>). In 2010, Cross Roads and Woodbury filed for bankruptcy protection. (<u>Id.</u>). The following year, Hosseini also filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code. (<u>See id.</u>; Def. Exs. D-E). In his bankruptcy petition, Hosseini listed the current value of the Property as $699,850, and the amount of the "[s]ecured" debt owed to Capital One on the mortgage as $2,052,841.01.[2] (Compl. ¶ 7; Def. Ex. A at Attachment 1). On October 24, 2011,

---

[2] Hosseini claims that only $699,850 of the total amount due to Capital One on the mortgage constituted "secured" debt, while the remaining $1,352,991.01 constituted "unsecured" debt that was discharged in bankruptcy. (<u>See</u> Compl. ¶ 8; Pl. Opp. Mem. (Docket No. 27) at 2). This court declines to credit this claim. Where a conflict exists between a plaintiff's allegations and the documents attached to the complaint, "the documents ... trump the complaint's allegations[.]" <u>See</u> <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 n.3 (1st Cir. 2012). In this case, Hosseini's own documents list the "Amount of Secured Claim" on the Property as $2,052,841.01. (Def. Ex. A at Ex. 1). To the extent Hosseini alleges that Capital One agreed to a reduction in the amount of the secured claim by failing to file a Proof of Claim or otherwise assert its rights in the bankruptcy proceeding, his claim is belied by the applicable authority. Under the relevant case law, a secured creditor such as Capital One is not required to file a proof of claim. <u>In re Tinker</u>, 355 B.R. 380, 384 (Bankr. D. Mass. 2006) ("A secured creditor may, but need not, file a proof of claim" (quoting <u>In re Maylin</u>, 155 B.R. 605, 611 (Bankr. D. Me. 1993)). Moreover, a discharge in bankruptcy "does not prohibit a secured creditor from enforcing a valid prepetition mortgage lien." <u>In re Best</u>, 540 B.R. 1, 9 (1st Cir. BAP 2015). Accordingly, Capital One's failure to file a proof of claim or otherwise intervene in Hosseini's bankruptcy matter cannot be interpreted as an agreement to reduce the amount of the loan or otherwise relinquish its rights to enforce its lien on the Property.

the Bankruptcy Court issued a notice to the plaintiff's creditors in which it informed them in

relevant part as follows:

> There does not appear to be any property available to the trustee to pay
> creditors.  *You therefore should not file a proof of claim at this time.*  If it
> later appears that assets are available to pay creditors, you will be sent
> another notice telling you that you may file a proof of claim, and telling
> you the deadline for filing your proof of claim....

(Def. Ex. E at 2 (emphasis in original)).[3]  It is undisputed that Capital One did not file a proof of

claim in the bankruptcy action.  (Compl. ¶ 7).  On August 6, 2012, the Bankruptcy Court

discharged the plaintiff's unsecured debt.  (Def. Ex. A at Attachment 2).  However, Capital One,

as a secured creditor, retained its rights in the Property, including its right to pursue

foreclosure.  See In re Best, 540 B.R. 1, 9 (1st Cir. BAP 2015) ("Fundamentally, a discharge

merely releases a debtor from personal liability on the discharged debt; when a creditor holds a

mortgage lien or other interest to secure the debt, the creditor's rights in collateral, such as

foreclosure rights, survive or pass through the bankruptcy" (quotations and citation omitted)).

### Hosseini's Efforts to Obtain a Loan Modification

On or about March 31, 2014, Hosseini and his wife received a letter from Harmon Law

Offices, P.C. ("Harmon") notifying them that Harmon had been retained by the defendant to

---

[3]  This court may consider public records, including court records from Hosseini's bankruptcy
proceeding, in connection with the defendant's motion to dismiss.  See In re Colonial Mortg. Bankers
Corp., 324 F.3d 12, 18-19 (1st Cir. 2003) (relying on facts from prior bankruptcy matter, and noting that
"matters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to
such matters does not convert a motion to dismiss into a motion for summary judgment"); Town of
Lexington v. Pharmacia Corp., Civ. Action No. 12-cv-11645, 2015 WL 1321457, at *2 n.2 (D. Mass. Mar.
24, 2015) ("pursuant to Fed. R. Evid. 201, the Court may take judicial notice of documents filed in the
[earlier] bankruptcy matter").

foreclose on the Property.  (Compl. ¶ 9; Def. Ex. A at Attachment 3).  Therein, Harmon informed

the plaintiff that he had defaulted on his mortgage loan, and that

> [u]nder the terms of the note and mortgage, there is outstanding through the date of this letter $1,670,000.00 in principal and $152,161.92 in interest and other charges for a total of **$1,822,161.92**.  Furthermore, attorney's fees and costs and other charges will continue to accrue pursuant to the terms of the loan documents.

(Def. Ex. A at Attachment 3).  Harmon specifically acknowledged that Hosseini had been

discharged in a Chapter 7 bankruptcy and was not personally liable for the amount of the

outstanding mortgage debt.  (Id.).  Nevertheless, it stated that Capital One still had the right to

foreclose on the Property if the default was not cured.  (Id.).

In response to the threat of foreclosure, Hosseini and Woodbury attempted to work

with the defendant in order to find a solution that would enable them to remain in their home,

and by December 2014, the plaintiff allegedly had begun the extensive process of applying for a

loan modification.  (See Compl. ¶¶ 10, 11).  According to Hosseini, that process lasted until May

2015, and required him to provide a significant amount of information to Capital One, including

appraisals of the Property, insurance records, credit reports, financial statements and other

financial documents.  (Id. ¶ 11).  Furthermore, as part of its review of Hosseini's eligibility for a

loan modification, Capital One arranged for a new appraisal of the Property, which was

completed on April 1, 2015.  (Id. ¶ 12).  As of the date of the appraisal, the Property was valued

at $1.1 million.[4]  (Def. Ex. A at Attachment 6).

---

[4]  The plaintiff alleges that the appraisal report valued the Property at $900,000.  (Compl. ¶ 12).  However, the "Review Conclusion" section of the report contains an appraised value of $1.1 million.  (Def. Ex. A at Ex. 6; see also Docket No. 1-5 (Amended Verified Complaint) at Ex. 6).

6

On May 1, 2015, Capital One sent Hosseini and his wife a letter notifying them that they had been approved for two different workout options, a Repayment Agreement and a Capital One Modification Agreement.  (Compl. ¶ 13; Def. Ex. F).  It further instructed them to review the enclosed information describing the terms and conditions of each option, sign the letter next to one of the workout options "indicating your acceptance[,]" and return a copy of the signed agreement to Capital One by May 18, 2015.  (Def. Ex. F at 1).  Attached to the letter under the heading, "Capital One Modification Program Approval Information" were several pages of information regarding the loan modification option.  (Id. at 7-9).  On the first page, Capital One stated, "[y]ou're approved to enter into a trial period plan under the Capital One Modification Program.  This is the first step toward qualifying for more affordable mortgage payments."  (Id. at 7).  It then explained that Hosseini would need to make three separate payments of $4,554.10 by June 1, 2015, July 1, 2015 and August 1, 2015 respectively.  (Id.).  Moreover, Capital One stated that the existing loan requirements would remain in effect throughout the trial period, and that the mortgage loan would not be modified if the trial period plan ("TPP") payments were untimely or the plaintiff failed to fulfill any other terms of the TPP.  (Id.).

The remaining pages contained additional information regarding the TPP and the Capital One Modification Program.  (Id. at 8-9).  Of particular significance, the defendant informed the plaintiff that his loan would not be modified until he made all of his TPP payments on time and both parties executed a modification agreement.  (Id. at 8).  It also informed him that it would not engage in foreclosure activities during the trial period, but that foreclosure activities "may be resumed if you fail[ ] to comply with the terms of the plan or don't qualify for

a permanent modification." (Id. at 9).  Furthermore, Capital One emphasized the fact that the

existing loan documents would remain in effect throughout the trial period.  (Id.).  Specifically,

under the topic, "Additional Trial Period Plan Information and Legal Notices," Capital One

emphasized as follows:

> **Your current loan documents remain in effect; however, you may make the trial period payment instead of the payment required under your loan documents:**
>
> - You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms.  You also agree that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

(Id. (emphasis in original)).

### The Alleged Oral Agreement

On May 15, 2015, Hosseini called the defendant in order to obtain clarification regarding

the Modification Program.  (Compl. ¶ 15).  The call was transferred to Michael G., a Loss Mitiga-

tion Specialist and Account Manager at Capital One.  (Id.; Def. Ex. A at Attachment 6 at 1).  The

plaintiff claims that during the course of this telephone call, the parties entered into an oral

agreement regarding the terms of a loan modification, which included a promise by Capital One

to reduce the principal amount remaining on the loan.  Capital One denies that any such agree-

ment was reached, and it contends that any oral representations which may have been made

by Michael G. during the course of the conversation did not rise to the level of an enforceable

contract.

According to the plaintiff, Michael G. first told him that their telephone conversation

was taking place on a recorded line, the purpose of which was to memorialize any agreement

that might be reached regarding the terms and conditions of a loan modification.[5]  (Compl.

¶ 15).  Allegedly, he also addressed the terms of a mortgage loan modification.  In particular,

the plaintiff claims that during the conversation, Michael G. told him the following:

> (1) **The principal amount of the new loan would be between
> $880,000.00 and $1,100,000.00 depending on a final appraisal**; (2) the
> maturity date of the loan would be September 1, 2055; (3) commencing
> on June 1, 2015 and then again on July 1, 2015 and August 1, 2015
> Plaintiff must pay [a monthly payment of] $4,554.10 of which $2,000.00
> would be put in escrow by Defendant so that Defendant can pay the
> insurance and property taxes on the property; (4) after the first three (3)
> months, the monthly payment could be slightly adjusted to account for
> the final appraisal, adjusted for taxes and insurance, and the exact
> interest rate; and (5) confirming documentation to be signed would
> follow.

(Id. ¶ 16 (emphasis added; footnote omitted)).  Hosseini and Woodbury then signed their

names next to the "Capital One Modification Program" option contained in the defendant's

May 1, 2015 letter in order to confirm their selection of the loan modification alternative.

(Compl. ¶ 13; Def. Ex. A at Attachment 5 at 1).  Hosseini also claims that he accepted the terms

of the modification, as described by Michael G. during the parties' telephone conversation, by

making the monthly TPP payments called for by the alleged oral agreement.  (Compl. ¶ 17).

---

[5]  The record contains a transcript of the May 15, 2015 telephone conversation between the plaintiff and
Michael G., which confirms that it was recorded by Capital One.  (Rec. Conv.).  However, the transcript
indicates that the audio system failed to record Michael G.'s side of the conversation, and only
Hosseini's statements are available for review.  (Id.).  While the plaintiff posits that Capital One
mishandled the recording or engaged in intentional spoliation of the recorded conversation, he has not
presented any evidence to substantiate such a claim.  (See Pl. Mem. at 6-7).  At this stage, therefore, it
would not be appropriate to draw any adverse inferences from the fact that Michael G.'s statements are
not included in the transcript of the recorded conversation.  Nevertheless, in accordance with the
applicable motion to dismiss standard of review, this court will accept the facts alleged by the plaintiff
regarding the substance of the parties' conversation.

### Hosseini's Receipt of the Modification Documents

On or about August 12, 2015, following Hosseini's completion of the TPP payments, the plaintiff received a letter from Capital One enclosing the final loan modification documents.  (Id. ¶ 18; Def. Ex. A at Attachment 8).  The letter instructed Hosseini and Woodbury to "review and sign (in front of a Notary) the 2 copies of the approved Loan Modification Agreement ('Agreement')," and return them to Capital One by September 9, 2015.  (Def. Ex. A at Attachment 8 at 1).  It further explained that after the defendant received "the properly executed signed Agreement and any additional documents (as applicable)" from the plaintiff, it would "sign and return a fully executed Agreement."  (Id.).  In addition, Capital One warned the plaintiff that "[i]f you don't sign the Agreement at this time, your existing loan terms will remain unchanged and we'll continue to service your loan according to those terms."  (Id.).

The written Agreement accompanying the defendant's letter called for Hosseini and Woodbury to make monthly payments of $4,756.84 beginning on October 1, 2015, with $2,091.97 of each payment going into an escrow account to cover taxes and insurance.  (Id. at 3; Compl. ¶ 18).  According to the plaintiff, the written terms of the Agreement were exactly the same as the terms that he agreed to during the recorded telephone conversation with Michael G. on May 15, 2015, with one material exception concerning the total amount that would remain due on the loan.  (Compl. ¶ 18).  Instead of capping the principal amount due on the loan at $1,100,000, the Agreement provided that "[t]he new principal balance of [the] Note will be $2,025,704.71[,]" of which $1,145,704.71 would be deferred until the Property was sold or transferred, the plaintiff paid the $880,000 difference between the new principal balance and the deferred amount, or the maturity date of the loan.  (Id.; Def. Ex. A at Attachment 8 at

10

2-3).  The plaintiff alleges that $2,025,704.71 not only was inconsistent with the oral repre-

sentations that had been made by Michael G., but also was more than double the current value

of the Property.  (Compl. ¶ 37).

The plaintiff claims that he attempted to contact Michael G. in order to resolve the

discrepancy between the written Loan Modification Agreement and the parties' alleged oral

agreement, but was not able to speak with him.  (See id. ¶¶ 19-21).  Instead, on September 4,

2015, Hosseini allegedly spoke to another Loss Mitigation Specialist at Capital One, who told

him that the defendant was "not in the business of writing off debt[,]" and that any promise

Michael G. had made to that effect had been done without the defendant's authority.  (Id.

¶ 21).  According to Hosseini, the Loss Mitigation Specialist also warned him that if the Loan

Modification Agreement was not signed and returned to Capital One by September 9, 2015, the

defendant would initiate foreclosure proceedings.  (Id.).  As described below, Hosseini did not

sign the written Agreement, and Capital One took steps to foreclose on the Property.

In addition to calling Capital One, Hosseini attempted to resolve the matter by con-

tacting Capital One in writing.  (Id. ¶ 22).  Thus, plaintiff's counsel wrote to Brian Williams, a

Loss Mitigation Specialist and Hosseini's primary contact at Capital One, regarding the discrep-

ancy between the numbers contained in the Loan Modification Agreement and the numbers

discussed with Michael G. on May 15, 2015.  (Def. Ex. A at Attachment 10).  In his letter, plain-

tiff's counsel described Hosseini's discussion with Michael G., including Michael G.'s alleged

representation that the full amount of the modified loan would be no more than $1,100,000.

(Id.).  He also stated that Hosseini had tendered three payments to Capital One in reliance on

Michael G.'s statements.  (Id.).  Furthermore, Hosseini's counsel requested that the defendant

adjust the Loan Modification Agreement "to reflect the amounts agreed upon in that conversa-

tion[,]" and asked that the defendant produce a copy of the recorded conversation in the event

it disputed the substance of the conversation.  (Id.).  Hosseini has since learned, and the record

confirms, that the transcript of the recorded conversation excludes Michael G.'s side of the

conversation, either because the audio equipment failed to record his statements or for some

other reason that is unclear from the record.  (See Compl. ¶ 30; Rec. Conv. at 5-13).  Because

this court has accepted Hosseini's version of the conversation for purposes of resolving the

defendant's motion to dismiss, any failure by Capital One to preserve the entire conversation

has not prejudiced the plaintiff.  (See note 5, supra)

Capital One responded to the correspondence from Hosseini's counsel in an unsigned

letter from the "Home Loans Default" department dated September 29, 2015.[6]  (Compl. ¶ 23;

Def. Ex. A at Attachment 11).  Therein, Capital One stated that "[t]he terms of our loan modify-

cation agreements are not negotiable and the modified principal balance is not tied to the value

of the property."  (Def. Ex. A at Attachment 11).  It further informed counsel that "Mr. Hosseini

did not accept the final loan modification, and the time has expired to accept this agreement.  If

Mr. Hosseini wishes, he may reapply for assistance."  (Id.).  Capital One also denied the plain-

tiff's request for a copy of the recorded telephone conversation.  (Id.).  As described above,

however, a transcript of Hosseini's portion of that conversation has since been produced to the

plaintiff.

---

[6]  The defendant's letter contained a case reference number that was unrelated to the plaintiff's loan matter, and an address for a property that was never owned by the plaintiff.  (Compl. ¶ 23).  Neverthe-less, the substance of the letter concerned Hosseini's loan, and was responsive to the correspondence from the plaintiff's attorney.  (See Def. Ex. A at Attachment 11).

It is undisputed that the plaintiff never signed the written Loan Modification Agreement. Nevertheless, he claims that he continued to make the monthly mortgage payments at the rate called for under the terms of the proposed Agreement. (Compl. ¶ 24). Therefore, according to Hosseini, he continued to pay Capital One $4,756.84 per month on the mortgage. (See Def. Ex. A at Attachment 8 at 3).

### Defendant's Threats to Foreclose on the Property

Hosseini claims that despite his efforts to make the monthly modified mortgage payments, Capital One took steps to conduct the foreclosure of the Property. Thus, on or about October 16, 2015, Hosseini and Woodbury were served with a "Notice of Foreclosure Sale" informing them that a foreclosure sale[7] would take place on November 13, 2015. (Compl. ¶ 25). In response to Capital One's threat to foreclose on the Property, Hosseini filed the instant action, along with a motion for a preliminary injunction seeking to enjoin the foreclosure sale.[8] (See Compl. ¶ 29; Docket No. 1-6). Capital One has agreed to refrain from any foreclosure proceedings until the court issues a ruling with respect to the plaintiff's motion.

---

[7] As Hosseini alleges in his complaint, the Property was misidentified in the documents accompanying the Notice of Foreclosure Sale as "225-227 County St., Lakeville" and "225 South County Road, Lakeville" instead of 225 County Road in Lakeville. (Compl. ¶ 25; Def. Ex. A at Attachment 12 at 1). However, it does not appear that this mistake has any relevance to the claims in this case.

[8] Hosseini claims that in addition to taking steps to foreclose on the Property, Capital One engaged in unfair and inappropriate conduct. For example, but without limitation, Hosseini alleges that in November 2015, Capital One informed him that the hazard insurance on the Property had expired, and that it intended to purchase the insurance at a cost that might be more expensive than insurance he could buy himself. (Def. Ex. A at Attachment 13). However, when Hosseini contacted his insurance agency, he allegedly learned that the insurance had been canceled because Capital One had failed to pay the premiums from his escrow account. (Comp. ¶ 26). It does not appear that these and other allegations of wrongdoing are relevant to the causes of action asserted in the complaint. Therefore, this court finds that it is not necessary to address such allegations further.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

**A.      Capital One's Motion to Dismiss**

Hosseini has asserted two separate causes of action against Capital One.  In Count I, he claims that the defendant breached an oral agreement under which it promised that the outstanding balance of Hosseini's mortgage loan would not exceed $1,100,000.  In Count II, he is seeking to hold Capital One liable for fraud based on its alleged misrepresentations and/or omissions regarding the terms of a loan modification.  Capital One has moved to dismiss these Counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for failure to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) or even the more relaxed standard of Fed. R. Civ. P. 8.  For the reasons described below, this court finds that the plaintiff's breach of contract claim is barred by the Massachusetts Statute of Frauds, and that he has failed to plead sufficient facts to meet the requirements of Rule 9(b) or otherwise support a claim against Capital One for fraud.

**i.      Standard of Review Under Fed. R. Civ. P. 12(b)(6) and 9(b)**

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  See Cooperman, 171 F.3d at 46.  Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane." <u>Garcia-Catalan v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" <u>Id.</u> (quoting <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted). This second step requires the reviewing court to "draw on its judicial experience and common sense." <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl.</u>, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citations omitted). Accordingly, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555, 127 S. Ct. at 1965 (citations omitted).

State law claims for fraud such as the claim asserted in Count II of Hosseini's complaint must meet the heightened pleading standard of Fed. R. Civ. P. 9(b). <u>N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale</u>, 567 F.3d 8, 13 (1st Cir. 2009) ("Rule 9(b)'s heightened pleading standard applies to state law fraud claims asserted in federal court"). That Rule provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, the standard "is satisfied by an

averment 'of the who, what, where, and when of the allegedly false or fraudulent representa-tion.'" Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)). "The other elements of fraud, such as intent and knowledge, may be averred in general terms." Id. However, the complaint must "also identify[ ] the basis for inferring scienter" by setting forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or mislead-ing." Cardinale, 567 F.3d at 13 (quotations and citations omitted). For the reasons detailed below, this court finds that Hosseini has not only failed to state a plausible claim for relief against Capital One, but has also failed to allege sufficient facts to support an inference of fraud on the part of the defendant.

### ii.  Count I: Claim for Breach of Contract

Hosseini's claim for breach of contract is based on his alleged conversation with Michael G. on May 15, 2015. Specifically, the plaintiff claims that during the conversation, the parties entered into an oral agreement regarding the material terms of a loan modification, which called for the plaintiff to make three monthly payments of $4,554.10 by June 1, 2015, July 1, 2015 and August 1, 2015, and provided that the amount of his modified mortgage loan would be between $880,000 and $1,100,000. (Compl., Count I). He also claims that he complied with his payment obligations, which he made in reliance on Michael G.'s representations, and that Capital One "materially breached the Agreement when in September 2015 it demanded that Plaintiff instead pay $2,025,704.74 – more than double the value of the property." (Id.). The defendant contends that this claim is barred by both the parol evidence rule and the Statute of Frauds. (Def. Mem. (Docket No. 23) at 9-10, 12-16). It also contends that dismissal is

warranted because Hosseini has failed to plead facts showing that Capital One intended to be bound by the alleged oral representations.  (Id. at 10-12).  For the reasons that follow, this court finds that the Statute of Frauds renders the alleged oral agreement unenforceable, and that Count I must be dismissed on this basis.  Therefore, this court will not address Capital One's other arguments.

### The Statute of Frauds

The Massachusetts Statutes of Frauds provides in relevant part as follows:

> [n]o action shall be brought ... [u]pon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them ... [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

Mass. Gen. Laws ch. 259, § 1.  "[A] contract affecting a mortgage falls squarely within the Statute."  French v. Chase Bank, N.A., Civil Action No. 10-cv-11330-RGS, 2012 WL 273724, at *2 (D. Mass. Jan. 31, 2012), and cases cited.  Because Capital One's alleged oral agreement to grant Hosseini a partial release of his mortgage was not in writing, it is unenforceable under the Statute of Frauds.  See Duff v. U.S. Trust Co., 327 Mass. 17, 20, 97 N.E.2d 189, 191 (1951) (ruling that oral agreement by bank for partial releases of mortgages fell within the Statute of Frauds and was therefore unenforceable); Metro. Credit Union v. Matthes, 46 Mass. App. Ct. 326, 334, 706 N.E.2d 296, 302 (1999) (finding that alleged oral agreement to grant partial release of mortgage was "unenforceable under the Statute of Frauds").

Hosseini argues that the Statute of Frauds should not apply in this instance because he relied to his detriment on the oral representations that were made by the defendant's representative during the May 15, 2015 telephone call.  (Pl. Opp. Mem. (Docket No. 27) at 8-10).

Specifically, Hosseini contends that he relied on Michael G.'s statements "by making the three (3) payments to Defendant with the understanding that the Mortgage Loan Modification would include a principal amount of between $880,000.00 and $1,100,000.00[,]"and that his reliance on the alleged oral statements defeats the Statute of Frauds. (Pl. Mem. at 8). This court disagrees and finds that his argument is insufficient to avoid the Statute's application.

Under Massachusetts law, "[a] plaintiff's detrimental reliance on, or part performance of, an oral agreement to convey property may estop the defendant from pleading the Statute of Frauds as a defense." Nessralla v. Peck, 403 Mass. 757, 761, 532 N.E.2d 685, 688 (1989). However, in this instance, "making payments on a mortgage, modified or not, is not detrimental reliance because [Hosseini] was required to make mortgage payments to avoid foreclosure" of the Property. DiCarlo-Fagioli v. JP Morgan Chase Bank, N.A., Civil No. 14-cv-372-JD, 2015 WL 6159057, at *3 (D.N.H. Oct. 20, 2015). As Capital One stated in its May 1, 2015 letter to the plaintiff, "[w]e won't proceed to foreclosure sale during the trial period, provided you're complying with the terms of the Trial Period Plan." (Def. Ex. F at 9). Therefore, the record shows that Hosseini was able to secure a substantial benefit by making the three TPP payments, and his alleged reliance on Michael G.'s statements was not detrimental to his interests.

Hosseini's attempt to compare this case to the Massachusetts Appeals Court's decision in Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 320 N.E.2d 919 (1974), does not warrant a different conclusion. In that case, the plaintiff argued that the defendant, Sunoco, should be estopped from asserting a Statute of Frauds defense where the defendant misled the plaintiff into believing that it would accept his offer for the sale of his land. See Cellucci, 2 Mass. App. Ct. at 727-28, 320 N.E.2d at 923. In determining that the Statute of Frauds did not apply, and

that Sunoco should be precluded from asserting that it had not accepted the plaintiff's offer, the court found it "[d]ecisive" that the plaintiff had broken off negotiations with Sunoco's competitor for the sale of his property to that entity in reliance on Sunoco's assurances that the deal between the parties was "all set" and that final approval by senior Sunoco personnel was "a purely formal or perfunctory matter." Id. at 729-30, 320 N.E.2d at 924.  Therefore, the plaintiff in the Cellucci case established that he "changed his position drastically" and was harmed by his reliance on the defendant's misrepresentations, whereas the plaintiff in this case has made no such showing.  See id. at 729 n.6, 320 N.E.2d at 924 n.6.

This court finds that Hosseini's breach of contract claim also fails because "a party cannot estop a Statute of Frauds defense . . . where contemporaneous writings contradict the existence of the [alleged oral] agreement." Johnson v. Johnson, 79 Mass. App. Ct. 1116, 946 N.E.2d 157 (Table), No. 10-P-471, 2011 WL 1744098, at *1 (May 9, 2011).  The record shows that in its May 1, 2015 letter, Capital One specifically notified Hosseini that "all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect[,]" and that "nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents." (Def. Ex. F at 9).  Those statements are directly at odds with the promise of a partial release that was allegedly made by Michael G. during the recorded telephone call.  Therefore, Hosseini's "reliance on the [alleged oral] agreement [was] unreasonable as [a] matter of law." Johnson, 2011 WL 1744098, at *1.

Finally, this court notes that the reliance exception to the Statute of Frauds applies where the party seeking to enforce an oral contract involving the transfer of an interest in land

"has so changed his position that injustice can be avoided only by specific enforcement" of the contract.  Barber v. Fox, 36 Mass. App. Ct. 525, 530, 632 N.E.2d 1246, 1249 (1994) (quotations and citations omitted).  Here, Hosseini is seeking enforcement of an alleged agreement to reduce the amount of his loan by more than $925,000 based on his payment of $13,662.30, out of which $6,000 was placed in escrow so the defendant could pay for insurance and taxes that were owed on the Property.  (See Compl. ¶¶ 14-18).  Under these circumstances, it would be more unjust to preclude Capital One from maintaining its Statute of Frauds defense than to sanction the plaintiff's effort to avoid it.

In a final attempt to fend off dismissal of his breach of contract claim, Hosseini asserts that the parties' alleged modification agreement actually complied with the Statute of Frauds.  Thus, Hosseini reasons that "the Statute of Frauds is satisfied because the parties exchanged a multitude of documents some of which were signed or otherwise authenticated including cancelled checks, the May 1, 2015 option choice agreement, the final non-signed agreement and the multitude of financial statements, emails, notes and correspondence between the parties[.]"  (Pl. Opp. Mem. at 10).  However, none of the communications or documents attached to or alleged in the complaint manifests an intent by Capital One to reduce the outstanding balance of Hosseini's loan.  On the contrary, the documentary evidence of record indicates that the existing terms and provisions of the note and mortgage would "remain in full force and effect[,]" and that nothing in the TPP was to be construed "as satisfaction or release in whole or in part of the obligations contained in the loan documents."  (Def. Ex. F at 9).  Accordingly, Hosseini's claim for breach of an oral agreement shall be dismissed.

### iii.    Count II: Claim for Fraud

Capital One has also moved to dismiss Count II of Hosseini's complaint, by which the plaintiff claims that the defendant engaged in fraudulent misrepresentations and/or omissions. Capital One argues that this claim must be dismissed because any agreement between the parties was subject to the Statute of Frauds, and because Hosseini has failed to allege sufficient facts to satisfy either the heightened pleading standard of Fed. R. Civ. P. 9(b) or the liberal pleading standard of Fed. R. Civ. P. 8.  (Def. Mem. at 16-19).  In addition, Capital One contends that Count II fails to state a claim for relief because the plaintiff's reliance on Michael G.'s statements was neither reasonable nor detrimental to his interests.  (Id. at 19-20).  For the reasons that follow, this court finds that the complaint fails to meet the pleading requirements of Rule 9(b), or to otherwise allege sufficient facts to support a claim for fraud.

### Failure to Plead Fraud

In order to prevail on a claim for fraud under Massachusetts law, the "plaintiff 'must allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [his] damage.'"  Masingill v. EMC Corp., 449 Mass. 532, 540, 870 N.E.2d 81, 88 (2007) (quoting Kilroy v. Barron, 326 Mass. 464, 465, 95 N.E.2d 190 (1950)).  As described above, Hosseini has not alleged facts showing that his reliance on Capital One's alleged misrepresentations regarding the terms of a loan modification was detrimental to his interests.  Therefore, his complaint fails to state a viable claim for fraud.  See Livingstone Flomeh-Mawutor v. Banknorth, N.A., 350 F. Supp. 2d 314, 320 (D. Mass. 2004) (finding that plaintiffs' failure to allege, much less present evidence, that they

relied on defendant's statements to their detriment was fatal to their claim for fraud under Massachusetts law).

Hosseini's failure to meet the heightened pleading standard of Rule 9(b) provides further support for this court's conclusion that Count II must be dismissed.  "Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter."  <u>Cardinale</u>, 567 F.3d at 13.  Thus, the plaintiff must allege facts showing that the challenged statements "were knowingly false when made."  <u>Id.</u> at 14.  In the instant case, Hosseini alleges in a conclusory manner that Capital One made misrepresentations and omissions "with knowledge of [their] untruth."  (Compl. ¶¶ 40-43).  However, he has not alleged any facts "from which an inference of fraudulent intent may be drawn."  <u>See</u> <u>Cardinale</u>, 567 F.3d at 14.  Count II contains no factual allegations, much less "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or mislead-ing."  <u>Cardinale</u>, 567 F.3d at 13 (quotations and citations omitted).  The allegations contained in the body of his complaint are similarly insufficient to support an inference of scienter.  While Hosseini claims that Michael G. made statements which turned out to be false, he has not alleged any facts to show that Michael G. had knowledge of their falsity or otherwise intended to mislead the plaintiff.  Accordingly, Count II of Hosseini's complaint must be dismissed for this reason as well.

**B.**  **Plaintiff's Motion for a Preliminary Injunction**

Hosseini has moved for equitable relief in the form of a preliminary injunction enjoining Capital One or anyone acting on its behalf from foreclosing on or otherwise adversely impacting his interest in the Property.  (Docket No. 1-6).  Entitlement to a preliminary injunction requires

the moving party to show, *inter alia*, a likelihood of success on the merits of his claim.  See

TouchPoint Sols., Inc. v. Eastman Kodak Co., 345 F. Supp.2d 23, 27 (D. Mass. 2004) (setting forth

factors that must be established in order to merit a preliminary injunction, and describing "a

likelihood of success on the merits" as the "most important" factor).  In light of this court's

determination that Hosseini has failed to state a claim for relief under either Count of his

complaint, his motion for a preliminary injunction is denied.

## IV.  CONCLUSION

For all the reasons detailed herein, "Capital One, N.A.'s Motion to Dismiss Plaintiff's

Second Amended Verified Complaint" (Docket No. 22) is ALLOWED and the "Plaintiff's Motion

for Preliminary Injunction" (Docket No. 1-6) is DENIED.


/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge